21695.   DAVIS *v.* THE STATE.

Decided November 11, 1931.

*M. B. Eubanks, Porter & Mebane,* for plaintiff in error.

*M. Neil Andrews,* solicitor-general, *Dean Owens,* contra.

BLOODWORTH, J.   The defendant was convicted of possessing intoxicating liquors, and excepts to the overruling of his motion for a new trial, which contains the general grounds only.   The un-

disputed evidence for the State is that the sheriff and a deputy sheriff went to the defendant's home and found a gallon and a half of whisky in tin cans hidden under some ferns within a few feet of·the defendant's porch and on his place. The witness testified: "There were two of these metal cans with big ferns sitting on top of them, right at the end of the porch, and we lifted the ferns off, which was in a big tub, and down in this can we found a gallon and a half of whisky in tin cans, corn whisky. . . The whisky was down in the metal can or drum, which was put there seemingly to put this fern on. There was a fern on each side of the step, right at the end of the step. The whisky was in the drum. We took it out of the drum."

The principal defense was that the whisky was put there by one Womack, who was mad with defendant and "framed" him by "planting" the whisky on the defendant's place and then "tipping off" the officers. The defendant attempted to prove by one witness that Womack was seen near the ferns on the day the defendant was arrested and while the defendant was away from home; by two other witnesses that Womack had said that "he was going to put down some liquor˙and turn him [defendant] up;" and the defendant in his statement said that Womack owed him some money and was "sore" at him, and that "the Womack boy told me his father did it, that he put it there to catch me." This evidence, if believed by the jury, would have supported the defendant's contention of a "plant," and authorized the defendant's acquittal. But a careful analysis of the evidence shows that the negro who said he saw Womack near the ferns, and the two negroes who testified that Womack said he was going to "put down some liquor and turn" defendant up, were all working for defendant and living on defendant's place. The evidence showed also that this alleged statement of Womack to the employees of the defendant was made "about a week before the time the sheriff found that liquor out there," and that the defendant was told of the alleged threat in ample time to notify the officers and forestall its execution. The jury evidently concluded that if Womack had even contemplated perpetrating such a fraud on the defendant, it would be unreasonable for him to go to people who were working for the defendant and living on his place, and notify them of his evil intentions against their employer; and that it was improbable that Womack would go to the de-

fendant's home and "plant" this whisky "in broad open daylight," as was testified to by the witness; especially so in view of the bad feeling that existed between the defendant and Womack, and the danger of Womack being seen. Also, the jury apparently concluded that it would be unreasonable to presume that Womack's boy would charge his father with this dastardly fraud, as stated by the defendant. The defendant did not put Womack's boy on the stand to corroborate his (defendant's) statement in this respect. In addition to the foregoing there were several conflicts in the testimony adduced by the defendant.

This case, so far as it relates to others living in the house, is different from those cases where two separate families or one family and roomers live in the same house, and the evidence points as strongly to one as to the other. There is nothing in this case to show that any one other than defendant and his family lived at the place where the liquor was found, and there is no intimation in the record that any member of the defendant's family owned the liquor.

The jury have the right and opportunity to judge the witnesses' demeanor on this stand, their interest or lack of interest in the case, and to pass upon the credibility of their testimony. They accepted the evidence of the State as true, and, as shown by their verdict, rejected the defendant's explanation of the presence of the whisky on his place. This court has no right to say that the jury must accept any particular evidence. The court did not err in overruling the motion for a new trial.

*Judgment affirmed. Broyles, C. J., and Luke, J., concur.*